## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| M.M.M. on behalf of J.M.M., | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-2134 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| MARTIN J. O'MALLEY, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, on behalf of her minor son, J.M.M., appeals the decision of the Commissioner denying her son supplemental security income ("SSI") benefits. The parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment [Dkt. 13] is DENIED and Defendant's motion for summary judgment [Dkt. 19] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

## SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

Children are considered disabled under the Social Security Act if they have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-step process to evaluate whether a child is disabled: (1) the child cannot be engaged in any "substantial gainful activity" (20 C.F.R. § 416.924(b)); (2) the child must have a medically determinable impairment or combination of impairments that qualifies as "severe" (20 C.F.R. § 416.924(c)); and (3) those impairment(s) must meet, medically equal, or functionally equal the severity one of the "listings" in the Social Security regulations (20 C.F.R. § 416.924(d)). *See McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021) (observing that because the disability analysis for children is not work-focused,

officials instead ask "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them").

If an impairment does not meet or medically equal a listing, the administrative law judge ("ALJ") considers six "domains" of functioning to evaluate whether an impairment functionally equals a listing. 20 C.F.R. § 416.926a(b)(1). These domains are as follows: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting with and relating to others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id*. To functionally equal a listing, the impairment must produce a "marked" limitation in at least two domains of functioning or an "extreme" limitation in one domain. *Id*. at § 416.926a(d). "A 'marked' limitation interferes 'seriously' with a child's ability to initiate, sustain, or complete activities in the domain, and an 'extreme' limitation interferes 'very seriously.' " *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a(e) 2, 3). The ALJ must consider the combined effect of all medically determinable impairments, even if a given impairment is not severe on its own. *Id*. at §§ 416.923, 416.924a(b)(4), 416.926a(a), and 416.926a(c). If a child meets the above requirements—in other words, does not engage in substantial gainful activity and has a severe impairment that meets, medically equals, or functionally equals a listing— the child will be found disabled. *Id*. § 416.924.

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). If there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "the

threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citation and quotation marks omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his or her conclusion. *Hess*, 92 F.4th at 676. Yet an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal signals and citations omitted). Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052-53. Finally, as to this Court's obligations, "[a] district (or magistrate) judge need only supply the parties…with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## BACKGROUND

On October 15, 2019, Plaintiff filed an application for SSI on behalf of her minor son J.M.M. (an individual under age 18, born in 2008), with an alleged disability onset date of September 18, 2019. J.M.M. was eleven years old at the time plaintiff filed the application and fourteen years old as of the ALJ's decision. [*See* R. 18, 33, 57.] Thus, during the adjudicated period, he was both a school-age child (*i.e.*, age 6 to the attainment of age 12) and an adolescent (*i.e.*, age 12 to the attainment of age 18). *See* Social Security Ruling ("SSR") 09-3p, 2009 WL 396025.

J.M.M.'s claim was denied initially and upon reconsideration, after which an Administrative Hearing was held by ALJ William Wenzel. [Administrative Record ("R.") 17.] That hearing was continued to obtain additional evidence. After the hearing and before he issued a decision, ALJ Wenzel passed away.

Pursuant to HALLEX I-2-1-55(F)(2),[1] the claim was reassigned to ALJ Bill Laskaris, who held another Administrative Hearing before deciding the claim. Following the second Administrative Hearing, ALJ Laskaris issued a November 16, 2022 non-favorable decision, denying J.M.M.'s claim for SSI.

The ALJ's November 16, 2022 decision followed the three-step sequential evaluation process for children, *see* 20 C.F.R. § 416.924 *et seq*. [R. 17-23.] ALJ Laskaris noted that J.M.M. was, at all relevant times, a school-aged child, *see* 20 C.F.R. § 416.926a(g). [R. 18.] At the first step of the three-step sequential evaluation process for children, the ALJ found that J.M.M. had not engaged in substantial gainful activity since October 15, 2019, the application date. *Id*. At the second step, the ALJ found that J.M.M. had the severe impairment of attention deficit hyperactivity disorder ("ADHD"). *Id*. At the third step, the ALJ found that J.M.M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appx. 1. *Id*. The ALJ went on to find that J.M.M. had marked limitations in attending and completing tasks; less-than-marked limitations in acquiring and using information, interacting with and relating to others, and caring for himself; and no limitations in moving about and manipulating objects, and health and physical wellbeing. [R. 20]. Ultimately, the ALJ found J.M.M. not disabled at any time since October 15, 2019, the date his application was filed. [R. 22-23.]

---

[1]    HALLEX (the acronym for the *Hearings, Appeals and Litigation Law Manual*) is an internal SSA policy manual written to convey "guiding principles, procedural guidance and information to the Office of Hearings and Appeals staff." *HALLEX,* Chapt. I-1-001; *see also Cromer v. Apfel*, 234 F.3d 1272 (7th Cir. 2000).

## DISCUSSION

Plaintiff alleges four errors with the ALJ's November 16, 2022 decision: (1) The ALJ improperly addressed the consulting opinions of Dr. Stone; (2) the ALJ improperly evaluated the Teacher Questionnaires in the record; (3) the ALJ erred in his determinations surrounding the domain of acquiring and understanding information; and (4) the ALJ erred in his determinations surrounding the domain of interacting with and relating to others. [Dkt. 14.] The Court disagrees, and addresses each contention in turn, below.

### I.    The ALJ's Treatment of Dr. Stone's "Opinions" was Proper

Although Plaintiff alleges the ALJ erred in evaluating the opinions of examining psychologist Dr. Michael Stone, the Court finds this argument unavailing. Under the regulations, a medical opinion "is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain itemized abilities. 20 C.F.R. § 416.913(a)(2). In child SSI claims, the abilities in question are the six functional domains, including acquiring and using information and interacting with and relating to others. 20 C.F.R. § 416.913(a)(2). Here, Dr. Stone never opined about J.M.M.'s functioning in any of the six functional domains. [R. 453-54, 492-93.] The closest Dr. Stone came to offering any opinion about J.M.M. was to conclude that J.M.M., because of his age, would be unable to manage his benefits on his own behalf if awarded them. [R. 454, 493.] Although Plaintiff points to some of Dr. Stone's examination findings such as poor memory or minimally appropriate behavior, those are mental status examination findings, not opinions. [Dkt. 14 at 11.] There simply was no actual medical opinion for the ALJ to assess in either of Dr. Stone's examination reports. Therefore, Plaintiff's argument fails. The Court will not remand on this basis.

### II.    The ALJ's Analysis of the Teacher Questionnaires was Proper

Next, Plaintiff criticizes the ALJ's treatment of the Teacher Questionnaires filled out by

various of J.M.M.'s teachers. [Dkt. 14.]

Specifically, on January 28, 2020, Ms. Meeks, J.M.M.'s special education/language arts/math teacher completed a Teacher Questionnaire. [R. 278-85.] On January 20, 2021, Ms. Adams-Ashwood, J.M.M.'s case manager and ELA/writing/math teacher, completed a Teacher Questionnaire. [R. 342-49.] J.M.M.'s math teacher, Mr. Issam Jaber, also completed an undated Teacher Questionnaire, submitted via facsimile to the Social Security Administration ("SSA") in December 2021.[2] [R. 21 (citing R. 373-81); Exhibit 18E at the hearing level.] Similarly, J.M.M.'s homeroom/literacy teacher completed an unsigned and undated Teacher Questionnaire, also submitted via facsimile to the Social Security Administration ("SSA") in December 2021. [R. 567-72; Exhibit 14F at the hearing level.] The Teacher Questionnaire is a pre-printed form with both checkboxes and space for narratives that presents ten itemized abilities related to a particular domain of functioning and asks the teacher to rate each using a five-tiered scale of: no problem, a slight problem, an obvious problem, a serious problem, and a very serious problem. [*See* Dkt. 20 at 6.]

Each of these four questionnaires constituted evidence from nonmedical sources. *See* 20 C.F.R. § 416.913(a)(4) (defining "evidence from nonmedical sources"). Consequently, the ALJ did not have to articulate his consideration of them under the factors, as the regulation makes clear. The ALJ was not required to "evaluate the questionnaires for consistency," as Plaintiff contends,[3] or even to assess them more thoroughly than he did. The ALJ was only required to consider the teacher questionnaires along with the other relevant evidence, and the Court finds he did so. [*See* R. 21.] The

---

[2]    Although this Teacher Questionnaire is unsigned, it is clear to the Court Mr. Jaber added his name to the initial page of the Questionnaire as he was filling it out. [R. 373.] Although it has no bearing on the Court's decision, the Court notes that Plaintiff refers to this Teacher Questionnaire as having been completed by Mr. Jaber, but Defendant does not make such an acknowledgement.

[3]    Evaluation of consistency is required only for an opinion or prior administrative medical finding. *See* 20 C.F.R. § 416.920c(a), (d), (b)(2).

Court will not remand on this basis.

Next, Plaintiff argues the ALJ inconsistently discounted the unsigned, undated Teacher Questionnaire at Exhibit 18E (the Jaber questionnaire) while crediting another unsigned, undated Teacher Questionnaire at Exhibit 14F (ostensibly from the homeroom/literacy teacher), but Plaintiff has not demonstrated error in this regard. The ALJ found Mr. Jaber's Teacher Questionnaire of little persuasive value not only because it was unsigned and undated but also because it contained no supporting explanations for the assessed ratings. [R. 21.] And while the Teacher Questionnaire at Exhibit 14F is unsigned and similarly light on supporting explanation, J.M.M.'s homeroom/literacy teacher did add a short explanation about the domain of interacting with and relating to others. [R. 570.] An ALJ is free to discount an unsigned opinion with dubious attribution, which he has done here, clearly explaining his reasons for giving more weight to one unsigned report than the other. *See Terry v. Astrue*, 580 F.3d 471, 476-77 (7th Cir. 2009) (*citing* 20 C.F.R. § 404.1519o, signature requirements on reports) ("An unsigned medical evaluation cannot be the kind of substantial evidence we would need to uphold the ALJ's RFC determination…"). Moreover, the ALJ did not solely rely on the Exhibit 14 unsigned/undated report; when Ms. Meeks completed her Teacher Questionnaire, on which the ALJ also relied, she supplied ample supporting explanations for the ratings she assessed. [R. 279-83.]

Plaintiff next contends the ALJ was incorrect with respect to the Questionnaires showing no problems in the domain of moving about and manipulating objects [Dkt. 14 at 14], but the ALJ was correct, at least with respect to the two Teacher Questionnaires he credited. [R. 21, 282, 571.] Plaintiff cites Mr. Jaber's Questionnaire but ignores the Questionnaires from Ms. Meeks and the homeroom/literacy teacher, which clearly reflect that Ms. Meeks and the homeroom/literacy teacher each observed no problems in that domain. [R. 282, 571.] Although Plaintiff claims Mr. Jaber's Questionnaire supports a marked limitation in this domain, she offers no other evidence or

observations to support such a finding. Notably, too, not once during the hearing did Plaintiff or her attorney contend J.M.M. had any physical problems.[4] [*See* R. 34-48.] Nor did Plaintiff or her attorney present any medical evidence to suggest any problem with moving about or manipulating objects. For these reasons, the Court will not overturn the ALJ's decision based on his assessment of the Teacher Questionnaires at issue here.

Finally, the Court agrees with the Commissioner that Plaintiff's suggestion of a marked limitation in the domain of moving about or manipulating objects, appearing for the first time in her brief before this Court, is disingenuous. *See Laura P. v. Comm'r of Soc. Sec.*, No. 22cv7188, 2023 WL 5227413, at *3 (N.D. Ill. Aug. 15, 2023) (finding it "noteworthy" that plaintiff did not assert mental limitations until after her claim was denied by an ALJ); *James E. v. Berryhill*, No. 17cv50295, 2019 WL 527553, at *2 (N.D. Ill. Feb. 11, 2019) (same). But more importantly, it shows no error regarding the ALJ's assessment of the Teacher Questionnaires in general or with respect to this domain.

### III.  The ALJ Properly Considered J.M.M.'s Ability to Acquire and Use Information

The acquiring and using information domain considers how well a child acquires or learns information and how well he uses the information learned. 20 C.F.R. § 416.926a(g); SSR 09-3p, 2009 WL 396025. Examples of typical functioning in this domain for school-age children include: learning to read, write, and do simple arithmetic; demonstrating learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into classroom discussions; applying learning in daily activities at home and in the community. SSR 09-3p, 2009 WL 396025, at *5. Similarly, for adolescents, examples of typical functioning include: continuing to demonstrate learning in academic assignments; applying learning in daily

---

[4]    Plaintiff stated J.M.M. was unable to ride a bicycle but she attributed that to "a cognitive problem," (*i.e.*, that he "can't stay focused.") [R. 47.]

situations without assistance (such as by going to the store or using public transportation); and comprehending and expressing simple and complex ideas using increasingly complex language in academic and daily living situations. *Id*. at *6. Examples of limitations in this domain include: (1) not demonstrating an understanding of words that describe concepts such as space, size, or time (such as inside/outside, big/little, morning/night); not using language appropriate for age; not reading, writing, or doing arithmetic at the appropriate grade level; and struggling with following simple instructions. *Id*.

Here, the ALJ found that J.M.M. had a less-than-marked limitation in the domain of acquiring and using information. [R. 20-22.] The ALJ noted J.M.M.'s mother's report that J.M.M.'s learning was limited. [R. 20 (citing R. 290).] He also observed J.M.M.'s history of low IQ scores, such as a full-scale IQ score of 53 in 2013, six years before the adjudicated period. [R. 21, 425.] However, the ALJ also considered ample evidence demonstrating that J.M.M.'s intellectual/cognitive difficulty was not as severe as Plaintiff alleged. For instance, J.M.M.'s academic records and related Individual Education Plan ("IEP") reports supported the ALJ's conclusion. Specifically, a school-based psychological reevaluation in March 2016 showed scores in the below-average range, including a composite IQ score of 81, which led J.M.M.'s IEP team to downgrade his classification from "cognitive impairment" to "learning disorder." [R. 21 (citing R. 425-27).] Additionally, in March 2022, J.M.M.'s IEP team concluded he no longer required special education services outside of the general education classroom setting. [R. 21, 558-59; *see also* R. 20, 38 (J.M.M.'s testimony to this effect).] In contrast, J.M.M. previously received 390 minutes per week of special services in a separate classroom. [R. 21 (citing R. 365).] It is clear to the Court the change in services was a significant factor in the ALJ's assessment of J.M.M.'s functioning in this domain. *Id*.

Additionally, the consultative mental status examination findings supported the ALJ's conclusion. The ALJ considered that in February 2020, J.M.M. exhibited impairment in performing

age-appropriate calculations but had no impairment in his ability to compare and contrast objects. [*Id*. (citing R. 453).] In April 2021, J.M.M. exhibited normal thought content and thought processes; although J.M.M. exhibited impairment in both calculations and comparing/contrasting, there was no evidence explaining why his ability to compare and contrast would have worsened since the previous year's evaluation. [R. 21-22 (citing R. 492).]

The ALJ's finding of less-than-marked limitation with acquiring and using information was also supported in part by J.M.M.'s daily activities. Specifically, he reads at home 30 minutes per day; is able to cook; do some cleaning and household chores when reminded; and engages in personal care independently.[5] [R. 20 (citing R. 43-44).]

The Teacher Questionnaires (discussed at length above) also provided substantial additional evidence of a less-than-marked limitation in acquiring and using information. As the ALJ noted, Ms. Meeks rated J.M.M. as having eight "obvious" and two "serious" problems in acquiring and using information but no "very serious" problems. [R. 21 (citing R. 279).] Indeed, Ms. Meeks wrote that J.M.M. had only "some difficulty acquiring and using information related to math and language arts due in part to his high level of distractibility." [R. 279.] Similarly, Ms. Adams-Ashwood indicated no very serious problems, rating J.M.M. with serious problems in three of the ten itemized abilities, obvious problems in four, and slight or no problems in the others. [R. 21 (citing R. 343).] Although Mr. Jaber indicated "serious" and "very serious" problems in this domain, his questionnaire was unsigned and undated, and there was no accompanying explanation to support the ratings assessed. [*Id*. (citing R. 375).] Moreover, the Teacher Questionnaire completed by J.M.M.'s homeroom/ literacy teacher showed no worse than "obvious" problems in this domain. [*Id*. (citing R. 568).]

---

[5]    At the same time, the Court acknowledges the record contains testimony from J.M.M's mother that she had to "force [J.M.M. (a 13-year-old boy at the time of the Administrative Hearing (R. 33))] to take a shower and put on clean clothes…and deodorant" but she did not explain what she meant by "force." [R. 47.] There is no suggestion J.M.M. did not shower on his own, or put his own clothes and deodorant on once reminded.

Finally, the ALJ explained that he found persuasive the prior administrative medical findings of reviewing psychological experts Gayle Williamson, Psy.D., and Russell Taylor, Ph.D., who concluded in March 2020 and April 2021, respectively, that J.M.M. had less-than-marked limitations in acquiring and using information. [R. 22, 61, 74-75.] Significantly, both Drs. Williamson and Taylor reviewed all the extant evidence in the file, including: (a) J.M.M.'s mother's reports about his purported inabilities in the Child Function Report; (b) the findings made by the examining psychologist in February 2020; (c) the April 2019 special education eligibility determination and its accompanying psychological reevaluation; and (d) Ms. Meeks' January 2020 Teacher Questionnaire. Dr. Taylor was also aware of J.M.M.'s April 2021 psychological evaluation. Nonetheless, Drs. Williamson and Taylor each concluded that J.M.M.'s limitation in in acquiring and using information was less-than-marked. [R. 61, 73-75.] These expert opinions, along with the other evidence considered and discussed by the ALJ, provide substantial evidence in support of the ALJ's finding. *See, e.g.*, *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

Plaintiff raises several arguments about the ALJ's finding in this domain, but they are unavailing. Plaintiff initially criticizes that the ALJ listed his findings in the six functional domains *seriatim* before proceeding to explain his rationale for those findings holistically [Dkt. 14 at 16], but this is not an error. Nothing requires that an ALJ present his rationale for each domain in any particular way. In fact, an ALJ need only "minimally articulate" his reasoning, such that a reviewing court can trace the ALJ's reasoning. *Berger*, 516 F.3d at 545; *Warnell*, 97 F.4th at 1054; *Morales*, 103 F.4th at 471. The ALJ has done so here.

Plaintiff next contends the ALJ did not consider educational evidence supportive of a marked limitation in this domain. [Dkt. 14 at 17-19.] Yet the ALJ confronted the evidence that was both favorable and unfavorable to Plaintiff's claim (including the very responses to the Teacher Questionnaires Plaintiff highlights). [R. 21 (citing R. 279, 343, 375, 658).] The ALJ likewise

considered the IEP reports and the cognitive testing results. [R. 21 (citing R. 351-71, 390-432, 528-64).] The ALJ even specifically noted that per the IEP reports, J.M.M. had continued difficulties staying focused, worked best one-on-one, and needed paraprofessional support. [R. 21, 352.] Contrary to Plaintiff's assertion, the Court does not agree that the ALJ "neglected" evidence; as the Seventh Circuit has consistently held, and recently reiterated, "an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The ALJ was not required to mention every one of the subtest scores on J.M.M.'s academic achievement testing or recount every description of J.M.M. provided in the IEP reports. Plaintiff's argument boils down to a request for the court to reweigh the evidence, which the court may not do. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("This is not a case where an ALJ ignored evidence contrary to his conclusion. Despite [plaintiff's] colorable arguments, we will not reweigh the evidence."); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."); *Warnell*, 97 F.4th at 1053. Plaintiff's argument also ignores the notion that "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus*, 994 F.3d at 903. Here, as discussed above, the ALJ's finding of a less-than-marked limitation in acquiring and using information is supported by substantial evidence. Significantly, the ALJ recognized that J.M.M.'s deficit in this domain was directly linked to his difficulty paying attention and staying on task, a conclusion supported by Ms. Meeks's Teacher Questionnaire and the March 2021 IEP report. [R. 22; *see* R. 279 (noting some difficulty in acquiring and using information "due in part to his high level of distractibility"), 352 (noting that when remote learning began, J.M.M.'s behavior – watching television and playing computer games during learning – contributed to his difficulty retaining new information).] The ALJ also noted that per the

treatment notes of record, J.M.M.'s focus and behavior improved with medication, and he needed no medication changes. [R. 21 (citing R. 465, 479-85, 620, 625).] That evidence further supported the less-than-marked limitation in acquiring and using information.

Lastly, Plaintiff relies heavily on statistics to assert error based on some of J.M.M.'s cognitive test scores [Dkt. 14 at 19-20] but fails to note that the testing must be specifically "designed to measure ability or functioning in" a particular domain. 20 C.F.R. § 416.926a(e)(2)(iii). Moreover, the agency "will not rely on any test score alone" in considering functional equivalence, as the regulations emphasize. 20 C.F.R. § 416.926a(e)(4). Specifically, in addition to a child's test scores meeting a certain deviation threshold, the evidence must also show that child's day-to-day functioning in the domain is consistent with that score. 20 C.F.R. § 416.926a(e)(2)(iii). Here, as discussed above, the evidence did not make such a showing. Test scores by themselves are insufficient, because "[n]o single piece of information taken in isolation can establish whether you have a marked or an extreme limitation in a domain." 20 C.F.R. § 416.926a (e)(4)(ii)(B).

In sum, the ALJ more than minimally articulated the substantial evidence supporting his finding of a less-than-marked limitation with acquiring and using information. The Court will not overturn the ALJ's decision on this basis.

### IV.  The ALJ Properly Considered J.M.M.'s Ability to Interact with and Relate to Others

The domain of interacting with and relating to others addresses how well a child can initiate and sustain emotional connections with others; develop and use the language of his community; cooperate with others; comply with rules; respond to criticism; and respect and take care of other peoples' possessions. 20 C.F.R. § 416.926a(i); SSR 09-5p, 2009 WL 396026. Examples of typical functioning in this domain for a child J.M.M.'s age include: (1) increasingly understanding how to work in groups to create projects and solve problems; (2) attaching to adults other than parents (such

as teachers or club leaders) and possibly wanting to please them to gain attention; (3) initiating and developing friendships with children of the same age; and (4) becoming increasingly able to resolve conflicts between self and family members, peers, and others. SSR 09-5p, 2009 WL 396026, *6. Examples of limitations in this domain are: (1) avoiding or withdrawing from people the child knows; (2) having difficulty cooperating with others; (3) having either no close friends or friends who are older or younger; and (4) having difficulty communicating with others (*e.g.*, not speaking intelligibly or using appropriate nonverbal cues when conversing). SSR 09-5p, 2009 WL 396026, *7.

Here, the ALJ found that J.M.M. had a less-than-marked limitation with interacting with and relating to others. [R. 20-22.] The ALJ noted J.M.M.'s mother's report that J.M.M. had speech difficulties; Ms. Meeks' assessment that J.M.M. had slight to serious problems in this domain due to difficulty staying focused; and J.M.M.'s "minimally appropriate" behavior at a consultative examination. [R. 20, 21 (citing R 281, 288-89, 452).] The ALJ contrasted this evidence with the January 2021 Teacher Questionnaire from Ms. Adams-Ashwood, who detailed no more than "obvious" problems in this domain. [R. 21 (citing R. 345).] Indeed, of the thirteen itemized abilities, Ms. Adams-Ashwood assessed J.M.M. as having "no problem" in nine, only a "slight problem" in three, and an "obvious problem" in only one. [R. 345.] The ALJ similarly considered that in December of 2021, J.M.M.'s homeroom/literacy teacher assessed no more than an "obvious" problem in two domain-related abilities. [R. 21 (citing R. 570).] The ALJ also considered J.M.M.'s testimony that he has a friend and spends time watching movies with his grandfather. [R. 20, 39-40.] The ALJ further relied on the prior administrative medical findings of reviewing psychological experts Drs. Williamson and Taylor, who concluded in March 2020 and April 2021, respectively, that J.M.M. had a less-than-marked limitation in interacting with and relating to others. [R. 22, 61, 76.] Again, both Drs. Williamson and Taylor reviewed all the extant evidence in the file, including J.M.M.'s mother's report that he did not make new friends or have friends his own age. [R. 61, 76.]

However, as the experts observed, J.M.M. exhibited an adequate ability to relate at the February 2020 mental status examination, and Dr. Taylor additionally considered that J.M.M. at the subsequent consultative examination was cooperative, verbal, and interactive, with adequate eye contact. [R. 61, 76; *see* R. 453, 491.] These expert opinions, along with the remainder of the evidence considered and discussed by the ALJ, provided substantial evidence in support of the ALJ's finding. *See Scheck*, 357 F.3d at 700. That the ALJ did not draw the same conclusions from the evidence that Plaintiff did is not a basis for remand. *See Gedatus*, 994 F.3d at 903; *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Next, although Plaintiff contends the ALJ did not explain how the Teacher Questionnaires supported the less-than-marked limitation [Dkt. 14 at 21], the Court finds this to be self-evident: the assessments of either "no" or "slight" problems in almost all itemized domain-related abilities simply do not reflect a marked limitation. [R. 22.]

Finally, Plaintiff again argues the ALJ "overlooked" certain evidence. [Dkt. 14 at 20-21.] Yet Plaintiff has not identified anything the ALJ overlooked. (For example, the ALJ considered both the March 2021 and the March 2022 IEP reports [*see* R. 21], although the ALJ clearly found different parts than Plaintiff did to be persuasive and consistent with other record evidence.) And again, the ALJ was not required to recite every detail from each of the exhibits he reviewed, nor was he required to mention every snippet of favorable evidence. *Deborah M.*, 994 F.3d at 788. The Court does not agree that the ALJ "overlooked" an entire line of evidence; consequently, the Court will not (and cannot) reweigh the evidence in the way Plaintiff suggests. *Warnell*, 97 F.4th at 1052-53.

The Court finds the ALJ's conclusion that J.M.M. experienced a less-than-marked limitation in the domain of interacting with and relating to others is supported by substantial evidence, including the opinions of two state-agency psychological experts. The Court will not remand on this basis.

15

**CONCLUSION**

For all the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence and contains the requisite adequate logical bridges between the evidence and his conclusions. The Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 13] is DENIED and Defendant's motion for summary judgment [Dkt. 19] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

ENTERED: September 23, 2024

_____

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge